THE STATE, DEFENDANT IN ERROR, v. JOHN W. NEW-
BERRY AND RUDOLPH NEUMAN, PLAINTIFFS IN
ERROR.

Persons cannot be guilty of "carrying on the business of private bank-
ing without authority," in violation of a criminal statute, merely
because, as president and treasurer of a New Jersey building and
loan association, they participate in its lawful business.

On error to the Monmouth Oyer and Terminer.

Before GUMMERE, CHIEF JUSTICE, and Justices DIXON,
GARRISON and SWAYZE.

For the state, *John E. Foster,* prosecutor of the pleas.

For the defendants, *Eusebius W. Arrowsmith, Charles L.
Corbin* and *W. E. Kesselburgh, Jr.* (of the New York bar).

The opinion of the court was delivered by

DIXON, J.   The defendants were indicted and convicted in
the Monmouth Oyer for "carrying on the business of private
banking without authority," in violation of "An act in rela-
tion to individual and private bankers, and subjecting them
to the supervision and control of the department of banking
and insurance."   *Gen. Stat., p.* 135.   That act declares that
every person who shall violate its provisions *"and* carry on the
business of banking without authority shall be guilty of a
misdemeanor."

At the trial it was shown that these defendants were the
president and treasurer of the Mercantile Co-Operative Bank,
a corporation organized under "An act to encourage the
establishment of mutual loan, homestead and building asso-
ciations," and its supplements.   *Gen. Stat., p.* 331.   Section
5 of this act declares that "the right of membership in all
associations formed under this act shall consist in the peri-
odical payment of such sum of money at such times and

subject to such penalties as shall be determined by the constitution, * * * or in the payment of a principal sum specified in such constitution, to be repaid by the company in such way and manner as shall therein be designated, with interest not exceeding seven per cent. per annum." Section 1 of a supplement approved March 29th, 1887 (*Gen. Stat., p.* 334), provides that any such association "may issue shares of stock in different series to mature and terminate in such manner as may be designated in and by the constitution or by-laws."

Under these provisions the constitution or articles of association established a series of shares of stock known as "Class D," described as follows: "Class D or savings bank deposit stock shall be of a maturity value of $1,000 per share. The dues thereon may be paid at a rate of not less than $1 per share, payable at the convenience of the subscriber during each successive year until the shares reach maturity."

The brief of the learned prosecutor for the state declares that it was under the guise of this class of stock that the state contends the defendants conducted the prohibited banking business, and the learned justice presiding at the trial instructed the jury that the one proposition in the case which it was of importance for the jury to determine was whether the defendants organized Class D as a scheme to carry on the business of private banking, and under that scheme did carry on such business, by the receipt of deposits and the paying out of those deposits upon drafts or receipts, and that if the defendants had done so they should be convicted. He further charged the jury that the scheme embodied in Class D was legal, and that the only question for them was whether that was in truth the scheme.

Under these instructions the jury found the defendants guilty, and now, on writ of error, the entire record of the proceedings has been certified to this court, and causes for reversal have been specified fully covering the matters which we deem it necessary to consider.

As already indicated, the conviction rests wholly on what was done respecting the shares in Class D, and the practice,

as shown by the testimony, was as follows: When a person subscribed for or desired shares in this class he signed what was called a savings deposit certificate, which indicated the number of shares taken and stated that he was entitled to receive interest from profits at the rate of four per cent. per annum on his deposits, guaranteed by the permanent capital stock of the bank. A pass-book was then given to him, in which the sums deposited were entered, and which contained a statement that deposits of not less than $1, and not more than $5,000, would be received from any one person; that the "Mercantile" was a co-operative savings and loan bank, under the supervision of the department of state; that it was authorized under the law to receive regular deposits of money; that money deposited would be paid to depositors in person or to their attorneys, or on the written order of either of them, provided the pass-book was presented, and that no money could be withdrawn, as a matter of right, other than one-tenth each month of the amount deposited with the bank. The method stated in these pass-books for the receipt and repayment of money was that actually pursued in the transaction of business.

The present question, then, is simply this: Could the defendants, by participating in these transactions as president and treasurer of the corporation, become guilty of "carrying on the business of private banking without authority?"

The only act done which pertained to the business of banking, as that business is defined in our statutes to "authorize and regulate the business of banking" (*Gen. Stat., p.* 120) and "concerning corporations" (*Pamph. L.* 1896, *p.* 277), was the reception and payment of deposits, and it was to this conduct that the attention of the jury was specifically directed as constituting the misdemanor of the defendants.

The right to receive and repay such deposits was expressly conferred upon this corporation by section 5 of the act under which it was organized, making the "right of membership" to consist in "the periodical payment of such sums of money, at such times * * * as shall be determined by the constitution, to be repaid by the company." This corporate func-

tion must necessarily be executed by individuals; and even if the mere exercise of that function, unconnected with the other usual practices of banks, could be deemed the carrying on of banking business, those individuals would not be "individual or private bankers," to whom alone the application of the criminal statute is by its title restricted. Nor would they be carrying on the business, in the words of the statute, "without authority," for the delegated power of the company would be ample authorization.

Under the view adopted by the court below that the institution of shares in Class D was legal, a view which has not been questioned in this court, and one on which the legality of the verdict must be supported, if supportable, and under the provision of section 5 of this corporation's organic law authorizing the reception and repayment of money pursuant to the company's articles of association, we think it manifest that the defendants suffered wrong by the charge of the court that on the evidence produced they could be convicted of the crime alleged, and by the denial of their request that the jury be directed to acquit them.

The judgment should be reversed, and the record remitted to the Monmouth Oyer for further proceedings according to law.